## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

PNC BANK, NATIONAL ASSOCIATION,      CASE NO: 9:21-cv-80758-DMM
SUCCESSOR BY MERGER TO NATIONAL
CITY BANK, SUCCESSOR BY MERGER
TO FIDELITY FEDERAL BANK & TRUST,

         Plaintiff,

vs.

LILIA BELKOVA A/K/A LILIA BELKOVA
RUSSO, individually; LILIA BELKOVA, AS
SUCCESSOR TRUSTEE OF THE LAND
TRUST AGREEMENT NO. 072003 DATED
FEBRUARY 9, 2004; DEER RUN
PROPERTY OWNERS ASSOCIATION,
INC.; JPG ENTERPRISES, INC.;
ENTERPRISE FUNDING SOLUTIONS LLC,

         Defendants.

_____/

## VERIFIED SECOND AMENDED COMPLAINT
## FOR *IN REM* RESIDENTIAL FORECLOSURE

COMES NOW Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY

MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY

FEDERAL BANK & TRUST ("Plaintiff" or "PNC"), by and through its undersigned counsel, and

hereby files this Verified Second Amended Complaint for *In Rem* Residential Foreclosure (the

"Complaint"), sues Defendants, LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO,

individually; LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST

AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004; DEER RUN PROPERTY OWNERS

ASSOCIATION, INC.; JPG ENTERPRISES, INC.; and ENTERPRISE FUNDING SOLUTIONS

LLC, and alleges as follows:

1300060.1

## JURISDICTION AND VENUE

1.      Jurisdiction exists in the judicial district comprising the Southern District of Florida pursuant to 28 U.S.C. § 1332(a) as there is complete diversity between all parties and the matter in controversy exceeds the amount of $75,000.00 exclusive of interest and costs.

2.      Venue is proper in the judicial district comprising the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) as (i) a substantial portion of events giving rise to Plaintiff's claims accrued and arose within Palm Beach County, Florida; and (ii) the hereinafter-described property is situated within Palm Beach County, Florida.

## PARTIES

3.      Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST, is a national bank chartered under the laws of the United States, with its home office, as set forth in its Articles of Association, located in the State of Delaware. Accordingly, for diversity purposes, Plaintiff is a citizen of the State of Delaware.

4.      Defendant, LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO, individually ("BELKOVA"), owns and is domiciled at 2251 Buck Ridge Trail, Loxahatchee, Florida 33470, in Palm Beach County, Florida (the "Property").  BELKOVA filed and recorded her Designation and Declaration of Homestead Affidavit certifying and declaring her sole ownership of the Property in the Official Records of Palm Beach County, Florida, on January 24, 2020, at Book 31179, Page 566.  Accordingly, for diversity purposes, BELKOVA is a citizen of the State of Florida.

5.      In February 2004, BELKOVA formed LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004 (the "Land Trust") for the purpose of acquiring the Property. BELKOVA is the Successor Trustee of the Land Trust.

6.      Defendant, LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004 ("TRUSTEE"), is domiciled at the Property.  Accordingly, for diversity purposes, TRUSTEE is a citizen of the State of Florida.

7.      TRUSTEE is named as a defendant because she may claim some interest in the Property by virtue of a Quit Claim Deed dated September 29, 2009, and recorded on January 30, 2012, in the Official Records of Palm Beach County, Florida, at Book 24985, Page 1196. BELKOVA acquired legal title to the Property as TRUSTEE but also was the sole beneficiary of the Land Trust.  Any interest held by TRUSTEE, if any, is subject, subordinate, and inferior to the interest of PNC's lien.

8.      Defendant, DEER RUN PROPERTY OWNERS ASSOCIATION, INC. ("DEER RUN"), is a corporation organized and existing by virtue of the laws of the State of Florida and maintains its principal place of business at 11784 W. Sample Road, Suite 103, Coral Springs, FL 33065.  Accordingly, for diversity purposes, DEER RUN is domiciled in and a citizen of the State of Florida.

9.      DEER RUN is named as a defendant because it may claim some interest in or lien upon the Property by virtue of a Claim of Lien recorded in the Official Records of Palm Beach County, Florida, at Book 28719, Page 1574, and/or a Notice of Lis Pendens recorded in the Official Records of Palm Beach County, Florida, at Book 28883, Page 1705.  Such interest, if any, is subject, subordinate, and inferior to the interest of PNC's lien.

10.     Defendant, JPG ENTERPRISES, INC. ("JPG"), is a dissolved corporation organized and existing by virtue of the laws of the State of Florida and maintained its principal place of business at 4121 Royal Palm Beach Boulevard, Royal Palm Beach, FL 33411. Accordingly, for diversity purposes, JPG is domiciled in and a citizen of the State of Florida.

11.     JPG is named as a defendant because it may claim some interest in or lien upon the Property by virtue of a Final Affidavit and Conditional Release of Lien recorded on November 1, 2007 in the Official Records of Palm Beach County, Florida, at Book 22225, Page 1582.  Such interest, if any, is subject, subordinate, and inferior to the interest of PNC's lien.

12.     Defendant, ENTERPRISE FUNDING SOLUTIONS LLC ("ENTERPRISE"), (i) is a dissolved limited liability company organized and existing by virtue of the laws of the State of Florida; (ii) maintained its principal place of business at 11255 Persimmon Blvd., West Palm Beach, FL 33411; and (iii) is comprised of a single member, James Ciuffetelli.  James Ciuffetelli is domiciled at 11255 Persimmon Blvd., West Palm Beach, FL 33411, in Palm Beach County, Florida.  Accordingly, for diversity purposes, ENTERPRISE is domiciled in and a citizen of the State of Florida.

13.     ENTERPRISE is named as a defendant because it may claim some interest in or lien upon the Property by virtue of a Florida Mortgage and Security Agreement recorded on August 14, 2009 in the Official Records of Palm Beach County, Florida, at Book 30824, Page 1307.  Such interest, if any, is subject, subordinate, and inferior to the interest of PNC's lien.

## GENERAL ALLEGATIONS

### A.     The Property and the PNC Loan

14.     The real property that is the subject of this litigation is located at 2251 Buck Ridge Trail, Loxahatchee, Florida 33470, heretofore designated as the Property, and bears the following legal description:

LOT 122 DEER RUN ACCORDING TO THE PLAT THEREOF AS RECORDED IN THE OFFICE OF THE CLERK OF THE CIRCUIT COURT IN AND FOR PALM BEACH COUNTY, FLORIDA IN PLAT BOOK 35 PAGES 34 THROUGH 39 INCLUSIVE.

15.     Title to the Property has been the subject of a series of transactions related to the Land Trust, through which the Property was originally purchased, to wit: (i) James Sobocienski transferred the Property on February 9, 2004, to Joseph M. Hanratty, Trustee of the Land Trust, which Warranty Deed was recorded on February 12, 2004 in the Official Records of Palm Beach County, Florida at Book 16544, Page 499-500; (ii) Joseph M. Hanratty, Trustee of the Land Trust to Trust Management, LLC, Successor Trustee of the Land Trust, which Quit Claim Deed was recorded on February 15, 2007 in the Official Records of Palm Beach County, Florida at Book 21419, Page 1352; and (iii) Trust Management, LLC, Successor Trustee of the Land Trust to TRUSTEE, which Quit Claim Deed was recorded on January 30, 2012, in the Official Records of Palm Beach County, Florida at Book 24985, Page 1196.

16.     By Bankruptcy Court Order, operation of law and BELKOVA's own Declaration, the Property is now owned by BELKOVA.

17.     In order to purchase the Property from Sobocienski, a Mortgage was executed in favor of Mackinac Savings Bank by Joseph M. Hanratty, as Trustee of the Land Trust, on February 9, 2004 (the "Mackinac Mortgage").  A true and correct copy of the Mackinac Mortgage is attached hereto as **Exhibit "A."**  The Mackinac Mortgage, in the amount of $123,750.00, was recorded on February 12, 2004, in the Official Records of Palm Beach County, Florida at Book 16544, Page 0501, and encumbered the Property.

18.     In connection with the Mackinac Mortgage, Joseph M. Hanratty, as Trustee of the Land Trust, executed a Trustee's Affidavit on that same date, in which he attested he "is the Trustee possessing full power without limitation to convey or mortgage property and to execute all documents necessary to any such transaction." That Trustee's Affidavit was recorded in the Official Records of Palm Beach County, Florida at Book 16544, Page 0513.

19.     The subject Promissory Note (the "Note") dated January 14, 2005, in the amount of $530,000, was executed and delivered by "Lilia Belkova, as Beneficiary of Land Trust 072003" to Plaintiff's predecessor by merger, Fidelity Federal Bank & Trust.  A true and correct copy of the Note is attached hereto as **Exhibit "B."**  The subject Mortgage (the "PNC Mortgage"), securing payment of the Note, was executed on or about that same date by Joseph M. Hanratty, as Trustee of the Land Trust, and was recorded on January 27, 2005, in the Official Records of Palm Beach County, Florida at Book 18066, Pages 0221-0237.  A true and correct copy of the PNC Mortgage is attached hereto as **Exhibit "C."**

20.     In conjunction with the execution of the Note and PNC Mortgage, a Construction Loan Agreement (the "Construction Loan Agreement") was executed and delivered on January 14, 2005, by "Lilia Belkova, as Beneficiary of Land Trust 072003" to Plaintiff's predecessor by merger, Fidelity Federal Bank & Trust.  A true and correct copy of the Construction Loan Agreement is attached hereto as **Exhibit "D."**

21.     Proceeds from the funds lent pursuant to the Note and the PNC Mortgage were used to pay off and satisfy in full the Mackinac Mortgage.

22.     Not long thereafter, on February 10, 2005, a Satisfaction of the Mackinac Mortgage was recorded in the Official Records of Palm Beach County, Florida at Book 18126, Page 0846. A true and correct copy of the Satisfaction of the Mackinac Mortgage is attached hereto as **Exhibit "E."**

23.     Subsequent to execution of the Note and the PNC Mortgage, National City Bank acquired the Note and the PNC Mortgage through its merger with Fidelity Federal Bank & Trust. Thereafter, PNC acquired the Note and the PNC Mortgage through its merger with National City Bank.

B.     **The 2011 Chapter 7 Bankruptcy**

24.     On October 6, 2011, BELKOVA filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case Number 3:11-bk-07333-JAF, in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division (the "Chapter 7 Bankruptcy").   On Schedule F therein, she listed PNC Mortgage as a creditor, and described the claim as "approx. 2005 alleged construction loan/contract cosigner," with the Amount of Claim sworn to as "$650,000 or Less."   The Schedules were filled out by hand and signed by BELKOVA under penalty of perjury.

25.     On January 11, 2012, PNC filed its Motion for Relief from the Automatic Stay in the Chapter 7 Bankruptcy in which it alleged that, as successor by merger to National City Bank as successor by merger to Fidelity Federal Bank & Trust, it held a security interest in the Property by virtue of the PNC Mortgage and Note attached and attested to by an Affidavit executed by an authorized representative of PNC.

26.     The Bankruptcy Court issued an Order Granting Relief from the Automatic Stay in PNC's favor on February 3, 2012 in the Chapter 7 Bankruptcy, with no objection to the Motion for Relief having been filed by BELKOVA.   That Order lifted the automatic stay imposed by 11 USC § 362(a), and authorized PNC to "proceed with the foreclosure of its lien*"* on the Property. The Order further authorized PNC "to obtain an *in rem* judgment against the property".

27.     On November 15, 2012, the Bankruptcy Court entered its Discharge of Debtor in the Chapter 7 Bankruptcy, discharging BELKOVA of her legal obligation to PNC under the Note (the "Chapter 7 Discharge").   The Chapter 7 Discharge plainly stated, however, that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the

debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."

### C.   The 2013 Chapter 12 Bankruptcy

28.     On November 4, 2013, BELKOVA filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code, Case No. 3:13-bk-07570-JAF, in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division (the "2013 Chapter 12 Bankruptcy").

29.     BELKOVA'S Schedules, filed on December 13, 2013, in the Chapter 12 Bankruptcy, listed the Property by description in her own handwriting on Schedule A, and described the nature of her interest in the Property "[a]s Trustee of Florida Land Trust 072003 and some beneficial interest – jointly with mother."

30.     Further, despite the Bankruptcy Court's prior recognition of PNC's lien in its Order granting relief from stay in the Chapter 7 Bankruptcy, BELKOVA did not list PNC as a secured creditor in her Schedule D.  Instead, she listed PNC as an unsecured creditor on Schedule F.

31.     BELKOVA described PNC's claim as "partial payment of construction claims to have a mortgage on West Palm Beach Farm – breached construction loan agreement, no valid lien – disputed." She also noted, however, that PNC's claim of $514,000 was discharged in the Chapter 7 Bankruptcy.

32.     On March 13, 2014, PNC filed its Proof of Claim in the 2013 Chapter 12 Bankruptcy.  Attached to the Proof of Claim were copies of the Note and PNC Mortgage.

### 1.   The Valuation Order

33.     On June 25, 2014, BELKOVA filed her Motion to Value Secured Claim Four (4) of PNC Bank, N.A.  In the body of the Motion, she admitted that the loan to PNC "is secured by

a lien on a farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470." The Motion sought the entry of an Order "valuing the secured claim of [PNC] in the amount of $200,000" among other payment terms.

34.     In addition, in support of that Motion, BELKOVA filed a sworn Affidavit of Valuation, in which she attested: "The name of the lienholder is PNC Bank" and "The type of property is real property and the description of the property is Debtor's farm located in Palm Beach County, FL." BELKOVA went on to challenge the amount owed on the "first mortgage" to PNC Bank, but did not challenge the Mortgage itself or the lien created thereby; nor did BELKOVA assert that the Property was not property of the bankruptcy estate. Rather, as noted, BELKOVA described it as a "first mortgage."

35.     On August 15, 2014, the Bankruptcy Court entered its Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., holding that the portion of Claim 4 secured by the Property was valued at $200,000. The Property was identified in the Order as 2251 Buck Ridge Trail, Loxahatchee, FL 33470.

36.     On September 29, 2014, PNC filed its Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., and a final evidentiary hearing ("FEH") was set on this motion on August 12, 2015.

37.     On August 7, 2015, BELKOVA filed her Response in Opposition to Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., stating she had relied on the Bankruptcy Court's Order valuing the Property and that she had completed "upgrades and repairs in reliance on the value of the property as determined by [the Bankruptcy] Court."

38.     The Hearing Proceeding Memo for the FEH on PNC's motion filed on August 12, 2015, reflects that PNC and BELKOVA announced in open court that the motion had settled.  That settlement was later memorialized in the Bankruptcy Court's Amended Order Granting Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A. (the "Valuation Order"), which was entered on September 15, 2015, and was later amended on October 23, 2015, unrelated to the substance of the Valuation Order.  A true and correct copy of the Valuation Order is attached hereto as **Exhibit "F."**

39.     In the Valuation Order, the Bankruptcy Court held: "The portion of claim Four (4) secured by the following real property is valued at $325,000."  The real property was described as 2251 Buck Ridge Trail, Loxahatchee, FL 33470.  The Order went on to hold, "The balance of this claim shall be treated as unsecured."

### 2.     The Plans and Confirmation Order

40.     On August 19, 2015, BELKOVA filed her Second Amended Chapter 12 Plan, in which she admitted both that she owned the Property and that PNC held a mortgage on the Property: "PNC Bank, National Association has the mortgage on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470" with a "new initial principal balance" of $320,000.

41.     PNC responded on September 15, 2015, with an Objection to Confirmation of Second Amended Chapter 12 Plan, objecting to the plan because it "does not reflect the agreement of the parties as to the value of the property.  The parties agreed to a value of $325,000, not $320,000 as the Plan states."  PNC further objected to the plan as proposed because "[i]f Debtor's Chapter 12 bankruptcy is dismissed or is converted to a case under any other chapter, the terms of the original Note and Mortgage will be restored."

42.     On June 23, 2016, BELKOVA filed her Third Amended Chapter 12 Plan, in which she admitted: "PNC Bank, National Association has the mortgage on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470."  She listed the "new initial principal balance" as $325,000, which was consistent with the amount set forth in the Valuation Order.

43.     On September 14, 2016, BELKOVA filed her Objection to Secured Claim Four (4) of PNC Bank, N.A., in which she alleged that she had obtained a discharge of her personal liability under the PNC Mortgage and Note in the Chapter 7 Bankruptcy.  In so doing, she admitted to having signed the Note in order to claim the benefit of the discharge therefrom.  She further admitted: "While the lien on the property in question survived the previous Chapter 7 Discharge, the personal liability as to the Debtor did not."

44.     BELKOVA filed a sworn Affidavit in support of her Objection, noting that she "obtained a Discharge of her personal liability under these mortgages/notes" but also admitting that the liens on the properties in question "survived the previous Chapter 7 Discharge."

45.     On February 5, 2017, BELKOVA filed her Fourth Amended Chapter 12 Plan, in which she admitted: "PNC Bank, National Association has the mortgage on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470." She further stated the "new initial principal balance shall be $325,000 (which includes 5% interest and is based upon the Court's Amended Order dated October 23, 2015…)."

46.     On April 5, 2017, BELKOVA filed her Fifth Amended Chapter 12 Plan.  Despite the prior Orders of the Bankruptcy Court, and her own multiple filings and sworn statements more fully described above, BELKOVA reiterated her ownership of the Property but changed her position on the validity of the PNC Mortgage: "PNC Bank, National Association has a purported mortgage (the Debtor does not agree that the lien is valid) on the Debtor's farm located at 2251

Buckridge Trail, Loxahatchee, FL 33470.  The new initial principal balance shall be $325,000 (which includes 5% interest and is based upon the Court's Amended Order dated October 23, 2015…)."

47.     On April 10, 2017, BELKOVA filed her Sixth Amended Chapter 12 Plan ("Sixth Amended Plan").  Despite the prior Orders of the Bankruptcy Court, and her own multiple filings and sworn statements more fully described above, BELKOVA once again reiterated her ownership of the Property but changed her position on the validity of the PNC Mortgage: "PNC Bank, National Association has a purported mortgage (the Debtor does not agree that the lien is valid) on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470.  The new initial principal balance shall be $325,000 (which includes 5% interest and is based upon the Court's Amended Order dated October 23, 2015…)."

48.     In addition, in the Sixth Amended Plan, BELKOVA also stated: "The Confirmation of this Plan shall have the effect of confirming that Debtor is the owner of this property located in Palm Beach County, Florida either individually or through the respective Florida Land Trust."

49.     Through the Sixth Amended Plan, BELKOVA sought the entry of a confirmation order that confirmed that she alone owned the Property, either directly or through the Land Trust. When considering the value of another unrelated parcel of real estate that was at issue in the Chapter 12 Bankruptcy, the Bankruptcy Court found that BELKOVA owned that property:  "The Court finds that Debtor is the trustee of the Land Trust.  Because Debtor is the Trustee of the Land Trust, she has full rights of ownership over the Real Property and has standing to value the Real Property."

50.     In the Sixth Amended Plan, BELKOVA also proposed that she would pay the property taxes and insurance for the Property.

51.     On May 15, 2017, the Bankruptcy Court entered its Order Confirming Chapter 12 Plan Allowing Claims and Directing Distribution (the "Confirmation Order").  A true and correct copy of the Confirmation Order is attached hereto as **Exhibit "G."**  In the Confirmation Order, the Bankruptcy Court confirmed the Sixth Amended Plan and noted: "If there is a discrepancy between the provisions of the Plan and this Order, the provisions of this Order supersede the Plan."

52.     The Confirmation Order instructed the Trustee to make full disbursements to creditors who had filed claims and were ruled by the Court as priority, secured, or unsecured as set forth on Exhibit A attached to the Confirmation Order, in the amounts set forth therein.

53.     In addition, the Confirmation Order held: "Secured creditors shall retain their liens" and "Claim Notes listed on the attached Exhibit A are incorporated into the terms of this Order."

54.     The Confirmation Order confirmed BELKOVA's obligation to pay the taxes and insurance for the Property.

55.     The Confirmation Order established BELKOVA's sole ownership of the Property. In addressing DEER RUN's claim, the Confirmation Order held:  "Deer Run Property Owners Association Inc. (Deer Run) may proceed in all respects with the pending legal action against the Debtor for alleged violation of the Declaration and related claims concerning 2251 Buckridge Trail, Loxahatchee, FL 33470 aka Lot 122, *which the Debtor owns*." (Emphasis added).

56.     The Confirmation Order also provided that the parties' previously agreed-upon value of PNC's secured claim was contingent.  In the Claim Notes at Exhibit A to the Confirmation Order, PNC's claim number 4 was listed in two parts – the secured claim in the amount of $325,000, with notes referencing the Valuation Order; and the unsecured claim in the amount of $433,510.40 paid out at $0.00.  The claim notes for the unsecured portion of the claim state: "Per

Doc #357 No Disbursements, However The Lien of Pnc Bank Shall Be Avoided Only Upon Completion Of Payments And Discharge."

### 3.     The Mortgage Validity Adversary Proceeding

57.     Against this backdrop, on December 14, 2018,  BELKOVA filed an adversary proceeding against PNC under the umbrella of the Chapter 12 Bankruptcy seeking to invalidate the PNC Mortgage (the "Mortgage Validity Adversary Proceeding").   More specifically, BELKOVA filed a single-count Complaint seeking a judicial determination that (i) the PNC Mortgage is invalid due to the failure to obtain the consent of the beneficiaries to the Land Trust; and (ii) PNC's claim against the Estate is discharged.

58.     In her Adversary Complaint, BELKOVA alleged that the Bankruptcy Court had jurisdiction over the matter pursuant to 28 USC §§ 157 and 1334, and that the Adversary Proceeding was a core proceeding pursuant to 28 USC § 157(b)(k).

59.     Further, in her Adversary Complaint, BELKOVA admitted that, on the petition date, November 4, 2013, she was the beneficial owner of the Property and the improvements thereon.  BELKOVA also admitted that, as of December 14, 2018, legal title to the Property was held by TRUSTEE.

60.     PNC filed its Answer, Affirmative Defenses and Counterclaim on July 2, 2019. PNC's Counterclaim contained two counts: (i) Equitable Lien; and (ii) Equitable Subrogation.

61.     BELKOVA answered the Counterclaim on August 12, 2019, in which she admitted that she held a beneficial interest in the Property as well as legal title to the Property through the Land Trust.

62.     On March 25, 2020, the Bankruptcy Court entered its Order on PNC Bank's Motion for Summary Judgment and, on March 26, 2020, its Final Judgment (collectively, the "Final

Summary Judgment"), which granted in part and denied in part PNC's motion for summary judgment in the Mortgage Validity Adversary Proceeding. A true and correct copy of the Final Summary Judgment is attached hereto as **Composite Exhibit "H."**

### 4. The Appeal and the Discharge

63. On April 7, 2020, BELKOVA commenced an appeal of the Final Summary Judgment.

64. Between the filing of the Notice of Appeal and the filing of her Statement of Issues on Appeal, BELKOVA fully performed under the Sixth Amended Plan and received her Chapter 12 discharge on June 3, 2020 (the "Chapter 12 Discharge").

### D. The 2020 Chapter 12 Bankruptcy filed in the Southern District of Florida

65. On May 26, 2020, BELKOVA filed another voluntary petition for relief under Chapter 12 of the Bankruptcy Code, Case No. 20-15112-MAM, this time in the United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division. That bankruptcy action was dismissed by the Bankruptcy Court on June 22, 2020.

### E. The 2020 Chapter 12 Bankruptcy filed in the Middle District of Florida

66. Less than one month after receiving her Chapter 12 Discharge, on July 23, 2020, BELKOVA filed yet another voluntary petition for relief under Chapter 12 of the Bankruptcy Code, Case No. 3:20-bk-02204-RCT, in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division (the "2020 Chapter 12 Bankruptcy").

67. On November 4, 2020, DEER RUN, another creditor in the 2020 Chapter 12 Bankruptcy, filed a Motion to Dismiss Case or for Prospective Relief From Stay in the 2020 Chapter 12 Bankruptcy.

68.     On November 9, 2020, PNC, as a secured creditor in the 2020 Chapter 12 Bankruptcy, filed a Notice of Joinder in DEER RUN's Motion to Dismiss the 2020 Chapter 12 Bankruptcy.

69.     On November 20, 2020, the Bankruptcy Court granted the creditors' Motion to Dismiss the 2020 Chapter 12 Bankruptcy and imposed a one-year bar to BELKOVA filing a subsequent bankruptcy case.

70.     On December 1, 2020, because BELKOVA ceased making her post-2013 Chapter 12 Plan payments to PNC, PNC filed a Motion for Prospective Relief from Automatic Stay in the 2020 Chapter 12 Bankruptcy.

71.     On December 22, 2020, the Bankruptcy Court granted PNC's Motion for Prospective Relief from Automatic Stay in the 2020 Chapter 12 Bankruptcy, granting PNC *in rem* relief from the automatic stay for a two-year period to enforce its secured claim and pursue any and all rights and remedies in and against the Property.

### COUNT I -  FORECLOSURE OF PNC'S MORTGAGE

72.     Plaintiff hereby realleges and reincorporates by reference its allegations in Paragraphs 1-71 of the Complaint as though fully set forth herein.

73.     This is an action to foreclose PNC's Mortgage on the Property, which is located in Palm Beach County, Florida.

74.     At the time that Belkova received her Chapter 7 Discharge, PNC was otherwise entitled to enforce the Note, and PNC has not subsequently transferred its interest in the Note.

75.     PNC is the owner and holder of the Note and the PNC Mortgage.  PNC is entitled to the *in rem* foreclosure of the Property as the owner and holder of the Note and the PNC Mortgage.

76.     BELKOVA, individually and as TRUSTEE, defaulted under the covenants, terms, and agreements of the PNC Mortgage, the Valuation Order, and the Confirmation Order, in that the payment due June 1, 2020, and all payments due subsequent thereto, have not been made.

77.     BELKOVA, individually and as TRUSTEE, further defaulted under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, for failing to pay the amounts due and owing for the property taxes assessed against the Property, as well as for failing to pay the hazard insurance for the Property.

78.     Plaintiff declares the full amount payable under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, to be due.

79.     There is now due and owing $301,406.96 in principal, plus interest, taxes due and/or advanced, and insurance premiums due and/or advanced, and other necessary costs made or advanced by PNC in connection with protecting its interest in the Property and rights under the PNC Mortgage, as modified by the Valuation Order and Confirmation Order, prior to and/or during the pendency of this action, and other necessary costs made or advanced by PNC in preparation for and/or during the pendency of this action, less any reduction for credits applied.

80.     All interests claimed in the Property by any and all Defendants, and any and all persons or parties claiming by, through or under them, are inferior and subject to the lien rights asserted by Plaintiff herein.

81.     All conditions precedent to the enforcement of the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, have been performed, have occurred, or have been waived.

82.     Plaintiff has retained the undersigned attorneys and is obligated to pay said attorneys a reasonable fee for services rendered.  Plaintiff is entitled to recover its attorneys' fees

under the terms of the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order.

WHEREFORE, Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST, requests that the Court:

A.       Declare the interests or claims of all Defendants to be inferior to the PNC Mortgage;

B.       Ascertain the amount due to Plaintiff for principal and interest on the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, and for insurance, abstracting, taxes, expenses, charges, and costs, including but not limited to attorney's fees, plus interest thereon;

C.       That if the sums due Plaintiff under the PNC Mortgage, the Valuation Order and the Confirmation Order are not paid immediately, the Court enter a judgment of mortgage foreclosure as to the Property in favor of Plaintiff and against all Defendants, and the Clerk of the Court sell the Property securing the indebtedness to satisfy the PNC Mortgage in accordance with the provisions of Florida Statutes §45.031;

D.       Retain jurisdiction of this action to enter any and all further orders and judgments as may be necessary and proper, including but not limited to the issuance of a writ of possession for the Property.

E.       Grant such further relief as this Court deems just and proper.

## COUNT II - FORECLOSURE OF EQUITABLE LIEN

83.    This is an action to foreclose an equitable lien on the Property, which is located in Palm Beach County, Florida, and is pled in the alternative to Count I above.

84.    Plaintiff hereby realleges and reincorporates by reference its allegations in Paragraphs 1-71 and 77-78 of the Complaint as though fully set forth herein.

85.    As held by the Bankruptcy Court in the Final Summary Judgment, the proceeds of the Mortgage were used, in part, to pay off the Mackinac Mortgage, which had been obtained to purchase the Property.

86.    The remainder of the loan proceeds were used to construct improvements on and to the Property, including but not limited to BELKOVA's residence constructed thereon.

87.    BELKOVA admitted in her Motion for Extension of Time to File Written Response, Defenses, and Counterclaims, which she filed in response to a lawsuit filed by JPG related to construction of the improvements on the Property, in Case No. 2008-CA-033801, filed in the Circuit Court of Palm Beach County, Florida, that she was the "only person who was really involved with plaintiff from the beginning to the end of any contractual relationship concerning construction of my home on the property owned by Florida Land Trust No. 072003."

88.    In order to construct her home on the Property, BELKOVA used the funds lent pursuant to the PNC Mortgage and Construction Loan Agreement.

89.    The Final Summary Judgment entered by the Bankruptcy Court in the Mortgage Validity Adversary Proceeding imposed an equitable lien against the Property, finding PNC has held enforceable lien rights from the time the PNC Mortgage and Note were executed, and that PNC may enforce these equitable rights by foreclosure and judicial sale of the Property, in accordance with applicable state law and procedure.

90.     PNC is entitled to enforce the equitable lien against the Property.

91.     In the event that the lien of the PNC Mortgage is invalid or facially inferior to the lien of any party for any reason, PNC is nonetheless entitled to foreclose on its equitable lien, having the priority of the Mackinac Mortgage.

92.     The amount of the equitable lien sought to be foreclosed herein should be at least the amount of the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, as well as other costs and advances incurred by PNC with respect to same, less a reduction for any payments made by or on behalf of BELKOVA through the Chapter 12 Bankruptcy, and should be deemed payable in the same installments, and at the same rate of interest and other terms as the Mortgage, as modified by the Valuation Order and the Confirmation Order.

93.     Because defaults have already occurred under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, and the Confirmation Order itself, PNC is entitled to enforce its equitable lien against the Property at the present time and realize the value of such lien through the sale of the Property.

94.     Plaintiff declares the full amount payable under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, to be due.

95.     There is now due and owing $301,406.96 in principal, plus interest, taxes due and/or advanced and insurance premiums due and/or advanced, and other necessary costs made or advanced by PNC in connection with protecting its interest in the Property and rights under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, prior to and/or during the pendency of this action, and other necessary costs made or advanced by PNC in preparation for and/or during the pendency of this action, minus any reduction for credits applied.

96.     Any interests claimed in the Property by any and all Defendants, and any and all persons or parties claiming by, through or under them, are inferior and subject to the equitable lien rights asserted by Plaintiff herein.

97.     Plaintiff has retained the undersigned attorneys and is obligated to pay said attorneys a reasonable fee for services rendered.  Plaintiff is entitled to recover its attorneys' fees pursuant to the inequitable conduct doctrine.

WHEREFORE, Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST, requests that the Court:

A.     Declare that Plaintiff is entitled to enforce its equitable lien;

B.     Declare the interests or claims of all Defendants to be inferior to Plaintiff's equitable lien;

C.     Ascertain the amount due to Plaintiff for principal and interest on the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, and for insurance, abstracting, taxes, expenses, charges, and costs, including but not limited to attorney's fees, plus interest thereon;

D.     Enter a judgment foreclosing Plaintiff's equitable lien as to the Property in favor of the Plaintiff and against all Defendants, if the sums due Plaintiff are not paid immediately, and instruct the Clerk of the Court to sell the Property securing the indebtedness to satisfy Plaintiff's equitable lien in accordance with the provisions of Florida Statutes §45.031;

E.     Retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including but not limited to the issuance of a writ of possession.

F.     Grant such further relief as this Court deems just and proper.

**COUNT III - FORECLOSURE OF EQUITABLE SUBROGATION LIEN**

98.    This is an action to foreclose an equitable subrogation lien on the Property, which is located in Palm Beach County, Florida, and is pled in the alternative to Counts I and II above.

99.    Plaintiff hereby realleges and reincorporates by reference its allegations in Paragraphs 1-71 and 77-78 of the Complaint as though fully set forth herein.

100.    PNC is entitled to enforce the equitable subrogation lien against the Property.

101.    In the event that the lien of the PNC Mortgage is invalid or facially inferior to the lien of any party for any reason, PNC is nonetheless entitled to be subrogated to the priority of the Mackinac Mortgage and to stand in the shoes of the Mackinac Mortgage by virtue of satisfying the lien of the Mackinac Mortgage against the Property.

102.    Because defaults have already occurred under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, and the Confirmation Order itself, PNC is entitled to have the lien to which it is subrogated foreclosed and enforced against the Property at the present time.

103.    Any interests claimed in the Property by any and all Defendants, and any and all persons or parties claiming by, through or under them, are inferior and subject to the equitable subrogation lien rights asserted by Plaintiff herein.

104.    Plaintiff has retained the undersigned attorneys and is obligated to pay said attorneys a reasonable fee for services rendered.  Plaintiff is entitled to recover its attorneys' fees pursuant to the inequitable conduct doctrine.

WHEREFORE, Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST, requests that the Court:

A.      Declare that Plaintiff is entitled to enforce its equitable subrogation lien;

B.      Declare the interests or claims of all Defendants to be inferior and subordinate to the lien to which Plaintiff is equitably subrogated;

C.      Ascertain the amount due Plaintiff from and after the date of the satisfying of the Mackinac Mortgage, including principal and interest on the Loan, the Valuation Order, and the Confirmation Order, and for insurance, abstracting, taxes, expenses, charges, and costs, including but not limited to attorney's fees, plus interest thereon;

D.      Enter a judgment foreclosing the lien to which Plaintiff is equitably subrogated as to the Property in favor of Plaintiff and against all Defendants, if the sums due Plaintiff are not paid immediately, and direct the Clerk of the Court to sell the Property to satisfy said lien in accordance with the provisions of Florida Statutes §45.031;

E.      Retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including but not limited to the issuance of a writ of possession.

F.      Grant such further relief as this Court deems just and proper.

**TO ALL DEFENDANTS: PLEASE NOTE EFFECTIVE OCTOBER 13, 2006, 15 U.S.C. §1609g OF THE FAIR DEBT COLLECTION PRACTICES ACT HAS BEEN AMENDED AS FOLLOWS:**

**(a) LEGAL PLEADINGS – Section 809 of the Fair Debt Collection Practices 15 U.S.C. 1692g is amended by adding at the end of the following new subsection:**

**"(d) Legal Pleadings – A communication in the form of a formal pleading in a Civil action shall not be treated as an initial communication for purposes of Subsection (a)."**

## <u>FLORIDA RULE OF CIVIL PROCEDURE 1.115(e) VERIFICATION</u>

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

PNC BANK, NATIONAL ASSOCIATION

By: _____

Printed Name: _____

_____ of PNC Bank, National Association

Dated: June __4__, 2021.
Jacksonville, Florida

**McGLINCHEY STAFFORD**

Kimberly Held Israel
Florida Bar No. 47287
William L. Grimsley
Florida Bar No. 84226
10407 Centurion Parkway North, Ste. 200
Jacksonville, FL 32256
Phone: (904) 224-4449
Primary E-mails: kisrael@mcglinchey.com
wgrimsley@mcglinchey.com
Secondary: jpowell@mcglinchey.com
***Attorneys for Plaintiff, PNC BANK, N.A.***

Page **24** of **24**