**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST, | CASE NO: 9:21-cv-80758-DMM |
| Plaintiff, | |
| vs. | |
| LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO, individually; LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004; DEER RUN PROPERTY OWNERS ASSOCIATION, INC.; ENTERPRISE FUNDING SOLUTIONS LLC, | |
| Defendants. _____/ | |

**PLAINTIFF'S AMENDED MOTION FOR FINAL SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST ("PNC"), by and through its undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure ("Rule(s)"), and this Court's November 16, 2021 Paperless Order (D.E. 69), files this Amended Motion for Final Summary Judgment and Incorporated Memorandum of Law (the "Motion for Summary Judgment"), and would show unto the Court the following:

1080780.16

I.      **PROCEDURAL HISTORY**

    A.      **Pleadings.**

    1.      On or about April 23, 2021, PNC filed its Verified Complaint for *In Rem* Residential Foreclosure related to subject property (the "Property") located in Palm Beach County, Florida. (D.E. 1).

    2.      On or about June 7, 2021, PNC filed its Verified Second Amended Complaint for *In Rem* Residential Foreclosure (the "Second Amended Complaint") (D.E. 16), naming the following Defendants:

        a.  LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO, individually;

        b.  LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004;

        c.  DEER RUN PROPERTY OWNERS ASSOCIATION, INC.;

        d.  JPG ENTERPRISES, INC.; and

        e.  ENTERPRISE FUNDING SOLUTIONS LLC;

    3.      Counsel for Defendants, LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO, individually ("BELKOVA"), and LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004[1] ("TRUSTEE", and collectively, the "Belkova Defendants"), appeared on their behalf and filed a Motion to Dismiss the Second Amended Complaint. (D.E. 42).

---

[1] After the Complaint was filed in this case and the Lis Pendens recorded, the Official Records reflect that BELKOVA executed a Trustee's Deed with respect to the Property in favor of "YOUR FLORIDA REALTY SERVICES LLC, as Successor Trustee of the Land Trust Agreement No. 072003 dated 2/9/04," which was recorded on July 2, 2021, in the Official Records of Palm Beach County, Florida at Book 32652, Page 0413.

1080780.16

2

4. On October 28, 2021, the Court denied the Belkova Defendants' Motion to Dismiss the Second Amended Complaint. (D.E. 61). To date, the Belkova Defendants have not filed a responsive pleading to the Second Amended Complaint, and their time for doing so has passed.[2]

5. On November 16, 2021, PNC filed a Motion for Judicial Default against the Belkova Defendants, which is pending. (D.E. 70).

6. On July 22, 2021, Defendant, DEER RUN PROPERTY OWNERS ASSOCIATION, INC. ("Deer Run"), filed an Answer to the Second Amended Complaint, in which no affirmative defenses were raised. (D.E. 24).

7. By Order of the Court, on August 10, 2021, Defendant, JPG ENTERPRISES, INC., was dropped as a party from this action. (D.E. 25, 29).

8. On August 10, 2021, a Clerk's Default was entered against Defendant, ENTERPRISE FUNDING SOLUTIONS LLC ("Enterprise Funding"), due to its failure to timely file a responsive pleading after being served with process in this case. (D.E. 27, 28).

9. On August 25, 2021, PNC filed a Motion for Default Judgment against Enterprise Funding, which remains pending before the Court. (D.E. 34). To date, Enterprise Funding has not filed a response to the Motion for Default Judgment.

**B.    Original Loan Documents.**

10. PNC's undersigned counsel was in possession of the original Note, which is endorsed "in blank," on PNC's behalf at the time of the filing of this foreclosure action, and PNC's undersigned counsel is still in possession of the original Note on PNC's behalf.

---

[2] *See* Fed. R. Civ. P. 12(a)(4)(A).

1080780.16

3

## II.     SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of showing that no genuine issue of material facts exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Sys., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

Although a "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact[,]" the burden shifts to the nonmoving party, who must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (internal quotations and citations omitted).

"Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial." *Hunter v. ADP Screening and Selection Services, Inc.*, Case No. 6:15-cv-845-ORL-31TBS, 2016 WL 4992472, at *2 (M.D. Fla. Sep. 19, 2016) citing *Celotex*, 477 U.S. at 324-25.

The nonmoving party must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Although "[e]vidence is viewed in a light most favorable to the nonmoving party," the court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures, Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). "[C]onclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F. 3d 1210, 1217 (11th Cir. 2000); "A party's self-serving affidavit that contains only unverified, conclusory allegations does not create a genuine issue of material fact." *Stroud v. Bank of America*, 886 F. Supp. 2d 1308, 1312 (S.D. Fla. 2012).

### III.   ARGUMENT

To make a prima facie case, "[f]oreclosure plaintiffs must show: (1) an agreement; (2) a default; (3) an acceleration of debt to maturity; and (4) the amount due." *Bank of Am., N.A. v. Delgado*, 166 So. 3d 857, 859 (Fla. 3d DCA 2015). As shown below, PNC is entitled to the entry of final summary judgment in its favor pursuant to Rule 56 because there is no genuine dispute as to any material fact, and PNC is entitled to judgment as a matter of law. In support of the Motion for Summary Judgment, PNC separately and contemporaneously filed a Statement of Material Facts, along with eighteen Exhibits thereto. PNC incorporates by reference the Statement of Material Facts and Exhibits attached thereto as though fully set forth herein.

#### A.   PNC Has Standing to Enforce a Valid Agreement.

There are a number of ways in which standing can be established. *See, e.g.*, *BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques*, 28 So. 3d 936, 939 (Fla. 2d DCA 2010) (finding a plaintiff may prove standing "through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer").

For example, when the plaintiff is not the original payee on the note, the plaintiff may

rely on a blank endorsement signed by the originating lender or prior holder, to establish standing. *See McLean v. JP Morgan Chase Bank Nat. Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012). When the plaintiff contends its standing to foreclose is derived exclusively from an endorsement, "the plaintiff must show that the endorsement occurred prior to the inception of the lawsuit." *Id.* at 174. This can be demonstrated by attaching a copy of the note with the endorsement to the complaint, or through other evidence showing the endorsement was executed prior to filing the complaint. *See id.*

Critically, when a plaintiff attaches a copy of a note with blank endorsement to a complaint, and then later tenders the original note to the court, which matches the copy of the note attached to the complaint, the court may reasonably infer that possession of the original note was transferred to the plaintiff before the complaint was filed. *See Ortiz v. PNC Bank, Nat. Ass'n*, 188 So. 3d 923, 925 (Fla. 4th DCA 2016) (finding that "if the Bank later files with the court the original note in the same condition as the copy attached to the complaint, then we agree that the combination of such evidence is sufficient to establish that the Bank had actual possession of the note at the time the complaint was filed and, therefore, had standing to bring the foreclosure action, absent any testimony or evidence to the contrary"); *Clay Cnty. Land Trust*, 152 So. 3d at 83 (finding a copy of a note endorsed in blank attached to a complaint sufficient to establish standing as a matter of law); *McLean*, 79 So. 3d 170 at 174 ("If the note or allonge reflects on its face that the endorsement occurred before the filing of the complaint, this is sufficient to establish standing."); *Taylor v. Bayview Loan Servicing, LLC*, 74 So. 3d 1115, 1117 (Fla. 2d DCA 2011) (finding that because the plaintiff attached copies of the note and allonge to its complaint, reflecting an endorsement to the plaintiff, and the plaintiff filed the original note and the allonge with the court, the plaintiff established its status as holder of

the note and its right to enforce the note).

Here, the copy of the Note attached to the original Complaint (as well as the Second Amended Complaint) contained the blank endorsement, and a copy of the original Note attached hereto (and that will be filed with the Court) contains the same endorsement. See Statement of Material Facts, Ex. "3." It is unquestionable that the blank endorsement to the Note was executed prior to the filing of the Complaint; otherwise, it could not have been attached to the Complaint. *See Clay Cnty. Land Trust, etc. v. JPMorgan Chase Bank, Nat. Ass'n*, 152 So. 3d 83, 85 (Fla. 1st DCA 2014) ("When appellee filed the foreclosure complaint, it attached a copy of the note and an undated allonge to the note containing an endorsement in blank. This was sufficient to establish as a matter of law that appellee had standing to bring the foreclosure action." (emphasis added)); *see also Green v. JPMorgan Chase Bank, N.A.*, 109 So. 3d 1285, 1288 (Fla. 5th DCA 2013); *U.S. Bank Nat. Ass'n v. Knight*, 90 So. 3d 824, 826 (Fla. 4th DCA 2012).

As such, PNC was the owner and holder of the Note and the PNC Mortgage at the time this case was filed, and PNC is entitled to seek the *in rem* foreclosure of the Property as the owner and holder of the Note and the PNC Mortgage.

PNC also established standing in yet another way at the inception of the case. Notwithstanding that the evidence showed the endorsement was affixed to the Note before the original Complaint was filed, regardless of when the endorsement was affixed to the Note, PNC established it had standing to enforce the Note pursuant to its merger with National City and Fidelity Federal.

When national banking corporations merge, so do their property rights and interests; no proof of transfer, such as a deed or endorsement, is necessary; the merger itself suffices.

*See* 12 U.S.C. 215a(e) ("All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer"); *see also Wachovia Mortgage, F.S.B. v. Goodwill¸* 199 So. 3d 346, 348 (Fla. 4th DCA 2016) ("Wachovia also established that in 2009 it merged with Wells Fargo Bank, N.A., after filing suit, and that the successor entity became the owner and holder of the Note at the time of trial by operation of law."); *Wells Fargo Bank, N.A. v. Tom Roberts Const. Co. Inc.*, 629 F. App'x 877, 880 (11th Cir. 2015) ("[T]he note and guaranty, which state that they are "freely assignable," coupled with the Certificate of Merger and letter from the Comptroller of the Currency establish, without dispute, that Wells Fargo acquired the loan by merger and inherited the rights of Wachovia to recover the outstanding indebtedness under the note and guaranty." (citing 12 U.S.C. § 215a(e))). If one national bank merges into another national bank, the succeeding national bank is deemed to be the same corporation as its predecessor. *See id.*

Here, after execution of the Note and the PNC Mortgage, National City Bank acquired the Note and the PNC Mortgage through its merger with Fidelity Federal. See Statement of Material Facts, Ex. "1," ¶¶ 3, 17, 18, 19. Thereafter, PNC acquired the Note and the PNC Mortgage through its merger with National City Bank. See Statement of Material Facts, Ex. "1," ¶¶ 3, 17, 18, 19. As such, PNC is deemed to be the same entity as Fidelity Federal since the origination of the Loan. Accordingly, separate and apart from PNC's evidence of its possession of the Note endorsed in blank at the inception of the case, PNC was independently authorized to bring this action to seek the *in rem* foreclosure of the Property as the "payee"

under the Note due to the merger of Fidelity Federal into National City Bank, and the subsequent merger of National City Bank into PNC.

In sum, PNC's standing at the inception of the case is unassailable.[3]

### B. BELKOVA Defaulted Under the PNC Mortgage, as Modified by the Valuation Order and the Confirmation Order.

In BELKOVA's 2013 Chapter 12 Bankruptcy, the Bankruptcy Court entered the Valuation Order. In the Valuation Order, the Bankruptcy Court determined that PNC's claim secured by the Property is valued at $325,000. BELKOVA subsequently filed her Sixth Amended Plan, in which she stated, among other things, that she would maintain property hazard insurance and pay post-petition property taxes directly to Palm Beach County. Thereafter, BELKOVA's Sixth Amended Plan was confirmed. After entry of the Confirmation Order, however, BELKOVA failed to pay property taxes and insurance, which were advanced on her behalf. See Statement of Material Facts, Ex. "1," ¶ 24. Consequently, BELKOVA, individually and as TRUSTEE, defaulted under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, by failing to pay the amounts due and owing for the property taxes assessed against the Property, as well as for failing to pay the insurance for the Property. *See PNC Bank, N.A. v. Clark*, 211 So. 3d 265, 266 (Fla. 3d DCA 2017) (finding

---

[3] In addition, it has been judicially determined based on BELKOVA's representations in her 2013 Chapter 12 Bankruptcy that PNC is the secured creditor under the PNC Mortgage against the Property, including, but not limited to, in the Valuation Order and the Confirmation Order. See Statement of Material Facts, Exs. "10," "12." Further, in BELKOVA's subsequent 2020 Chapter 12 Bankruptcy, the Bankruptcy Court determined that PNC is entitled to pursue the *in rem* relief it seeks in this foreclosure action based upon the Order granting PNC prospective relief from the automatic stay. (D.E. 16 ¶¶ 66-71).

1080780.16

the borrower's failure to pay property taxes advanced by the bank established a breach under the loan entitling the bank to a foreclosure judgment).

Moreover, the Valuation Order and the Confirmation Order required that BELKOVA continue to make monthly payments following the completion of her confirmed Chapter 12 Plan. See Statement of Material Facts, Exs. "10," "12." BELKOVA completed her Chapter 12 Plan, and she received her Chapter 12 Discharge on June 3, 2020. See Statement of Material Facts, Ex. "13." However, BELKOVA failed to make the monthly payment due for June 1, 2020, and all subsequent payments. See Statement of Material Facts, Ex. "1," ¶ 22. Consequently, BELKOVA, individually and as TRUSTEE, defaulted under the covenants, terms, and agreements of the PNC Mortgage, the Valuation Order, and the Confirmation Order, in that the payment due June 1, 2020, and all payments due subsequent thereto, have not been made. See Statement of Material Facts, Ex. "1," ¶ 22.

On March 16, 2021, the Notice of Default was mailed to BELKOVA informing of the defaults under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, and action necessary to cure the defaults. See Statement of Material Facts, Ex. "1," ¶ 23. To date, those defaults have not been cured. See Statement of Material Facts, Ex. "1," ¶ 23.

      **C.**     **PNC Has Been Damaged by BELKOVA's Defaults.**

As a result of BELKOVA's defaults under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, PNC has been damaged due the BELKOVA's failure to make the June 1, 2020 payment, and all subsequent payments. As the Affidavit attached to the Statement of Material Facts reflects, the following amounts are due and owing under the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order: (i)

unpaid principal in the amount of $299,934.42; (ii) accrued interest in the amount of $23,070.40 (the *per diem* interest is $41.09); (iii) post-confirmation escrow advances for taxes and insurance in the amount of $16,727.25; and (iv) post-confirmation property inspections in the amount of $750.  See Statement of Material Facts, Ex. "1," ¶ 24.

In addition, PNC has incurred substantial attorney's fees and costs associated with protecting its interest in the Property and rights under the PNC Mortgage in this foreclosure action and a number of bankruptcy proceedings in which PNC's interest in the Property by virtue of the PNC Mortgage was at issue, which PNC is entitled to recover pursuant to Paragraphs 9, 19, 22, and 24 of the PNC Mortgage.  See Statement of Material Facts, Ex. "1," ¶¶ 25, 26, Ex. "4."  *See U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Leigh*, 293 So. 3d 515, 516 (Fla. 5th DCA 2019) (finding attorney's fees were recoverable under paragraph 19 of the mortgage from prior litigation even though the plaintiff was not the prevailing party in the prior litigation); *Webber for Keitel v. D'Agostino*, 251 So. 3d 188, 192 (Fla. 4th DCA 2018) (upholding a fee awarded in state court for time spent litigating in federal bankruptcy court); *Len-Hal Realty, Inc. v. Wintter & Cummings*, 689 So. 2d 1191, 1191 (Fla. 4th DCA 1997) (affirming an order awarding a former law firm attorney's fees through a lien on the property which was the subject of the foreclosure, which included work performed by the discharged law firm in getting a bankruptcy stay lifted).

Paragraph 9 of the PNC Mortgage provides that PNC may do and pay for whatever is reasonable or appropriate to protect its interest in the Property and rights under the PNC Mortgage, including but not limited to paying reasonable attorney's fees in bankruptcy proceedings.  See Statement of Material Facts, Ex. "4" at 8-9.  Any amounts disbursed in accordance with Paragraph 9 of the PNC Mortgage, including attorney's fees, automatically

become "additional debt" secured by the PNC Mortgage.  See Statement of Material Facts, Ex. "4" at 9.  Paragraph 22 entitles PNC to "all expenses incurred in pursuing remedies provided" for in Paragraph 22, including attorneys' fees, and Paragraph 24 expressly defines attorney's fees to also include "any attorneys' fees incurred in a bankruptcy proceeding."   See Statement of Material Facts, Ex. "4" at 14.  Paragraph 19 of the PNC Mortgage provides that PNC is entitled to all sums due and all expenses incurred in enforcing the PNC Mortgage, which includes reasonable attorney's fees as provided in Paragraphs 9, 22 and 24 of the PNC Mortgage. See Statement of Material Facts, Ex. "4" at 12-13.  The total amount of fees incurred by PNC in protecting its interest in the Property and rights under the PNC Mortgage post-Confirmation through October 2021 is $191,229.60.   See Statement of Material Facts, Ex. "18."

## IV.  CONCLUSION

For all of the foregoing reasons, the Court should award final summary judgment in favor of PNC pursuant to Rule 56 because there is no genuine dispute as to any material fact, and PNC is entitled to judgment as a matter of law.

WHEREFORE, Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST, requests that the Court: (i) declare the interests or claims of all Defendants to be inferior to the PNC Mortgage; (ii) ascertain the amount due to PNC for principal and interest on the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, and for insurance, abstracting, taxes, expenses, charges, and costs, including but not limited to attorney's fees, plus interest thereon; (iii) that if the sums due PNC under the PNC Mortgage, the Valuation Order and the Confirmation Order are not paid immediately, the Court enter a judgment of mortgage foreclosure as to the Property in favor of

PNC and against all Defendants, and the Clerk of the Court sell the Property securing the indebtedness to satisfy the PNC Mortgage in accordance with the provisions of Florida Statutes §45.031; (iv) retain jurisdiction of this action to enter any and all further orders and judgments as may be necessary and proper, including but not limited to awarding attorney's fees and costs, entertaining re-foreclosure proceedings, if any, and the issuance of a writ of possession for the Property; and (v) grant such further relief as this Court deems just and proper.

Respectfully submitted on this 16th day of November, 2021

**McGLINCHEY STAFFORD**

*/s/ William L. Grimsley*
Kimberly Held Israel
Florida Bar No. 47287
William L. Grimsley
Florida Bar No. 84226
10407 Centurion Parkway North, Ste. 200
Jacksonville, FL 32256
Phone: (904) 224-4449
Primary E-mails: kisrael@mcglinchey.com
wgrimsley@mcglinchey.com
Secondary: cgipson@mcglinchey.com
***Attorneys for Plaintiff, PNC BANK, N.A.***

## CERTIFICATE OF SERVICE

I hereby certify that in accordance with this Court's electronic filing procedures, this document has been electronically filed this 16th day of November, 2021. A Notice of Electronic Filing will be sent by the Court to all counsel of record who have consented to e-mail notification and electronic service. This document is available for viewing and downloading from the Court's ECF system.

**VIA CM/ECF**

**Steven R. Braten, Esq.**
SBraten@rosenbaumpllc.com
*Counsel for Defendant, DEER RUN PROPERTY OWNERS ASSOCIATION, INC.*

**David Merrill, Esq.**, dlmerrill@theassociates.com
Counsel for *Defendants, LILIA BELKOVA, INDIVIDUALLY, AND LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004*

**VIA U.S. MAIL**

**Enterprise Funding Solutions LLC**
c/o James Ciuffetelli
11255 Persimmon Blvd.
West Palm Beach, FL 33411
*Defendant*

**Enterprise Funding Solutions LLC**
c/o Steven Kivett
4600 N. Flagler Dr.
West Palm Beach, FL 33407
*Defendant*

                                                  */s/ William L. Grimsley*
                                                  ATTORNEY

1080780.16