UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST,

    Plaintiff,

vs.

LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO, individually; LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004; DEER RUN PROPERTY OWNERS ASSOCIATION, INC.; ENTERPRISE FUNDING SOLUTIONS LLC,

    Defendants.
_____/

CASE NO: 9:21-cv-80758-DMM

**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff, PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO NATIONAL CITY BANK, SUCCESSOR BY MERGER TO FIDELITY FEDERAL BANK & TRUST ("PNC"), by and through its undersigned counsel, and pursuant to Local Rule 7.1(c)(1) of the United States District Court for the Southern District of Florida, files this Reply to Defendants', LILIA BELKOVA A/K/A LILIA BELKOVA RUSSO, individually ("BELKOVA"), and LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004 ("TRUSTEE", and collectively, the "Belkova Defendants"), Response to Plaintiff's Amended Motion for Summary Judgment and Statement of Material Facts (D.E. 91; the "Response"), and in support hereof states as follows:

1. On November 16, 2021, PNC filed the Amended Motion for Summary Judgment and Incorporated Memorandum of Law, along with its Statement of Material Facts. (D.E. 71, 72).

1080780.16

2. On December 21, 2021, the Belkova Defendants filed their Response. (D.E. 91). The entirety of the Belkova Defendants' Response is three pages consisting of nine paragraphs of argument without any factual support. They do not take issue with any of the facts of the case, and instead offer their own interpretation of the legal consequence of some of those facts.

3. Their primary contention is that the Property was not conveyed to the Land Trust in accordance with Florida law, rendering the Warranty Deed void, and negating all of the transactions and events that followed. Alternatively, they briefly argue in passing that, even if the Property had been conveyed to the Land Trust, no subsequent actions on behalf of the Land Trust were done at the written direction of the purported sole beneficiary of the Land Trust.

4. For the reasons set forth below, the Court should summarily reject the Belkova Defendants' arguments, and enter a Final Summary Judgment in favor of PNC.

I. **Judicial Determinations Made in the 2013 Chapter 12 Bankruptcy Preclude the Arguments Made in the Response.**

PNC filed the Motion for Summary Judgment, along with its Statement of Material Facts and Exhibits thereto, all of which PNC incorporates by reference as though fully set forth herein.

   A. *The Doctrines of* **Res Judicata** *and Collateral Estoppel preclude revisiting ownership of the Property.*

"When a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law." *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984) (citations omitted); *see SMK Associates, LLC v. Lorali, Inc.*, 14-CV-61460, 2015 WL 11197776, at *2 (S.D. Fla. Jan. 21, 2015) (stating same and citing *Precision Air*). Therefore, because the prior judicial proceedings that serve as the basis for the application of the doctrines of *res judicata* and/or collateral estoppel occurred in BELKOVA's 2013 Chapter 12 Bankruptcy, this

Court must apply federal law when examining those doctrines. *See id.*

"Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (citations omitted). "In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." *Id.* (citations omitted).

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *Id.* The following must be present for the application of collateral estoppel:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (citations omitted).[1]

Here, the issue of ownership of the Property was previously determined with finality, based on representations made by BELKOVA, with the entry of the Confirmation Order in her 2013 Chapter 12 Bankruptcy. Addressing *res judicata*, the required elements are satisfied in this case.

---

[1] "The purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (alteration in original). "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Id.*

As to the first and second elements, the Confirmation Order was entered on May 15, 2017 by a court of competent jurisdiction, namely, the Bankruptcy Court for the Middle District of Florida. Regarding the third element, the parties, or those in privity with them, were parties in the 2013 Chapter 12 Bankruptcy and are parties in this case.

Finally, the fourth element is satisfied because the claim of ownership of the Property was asserted in the 2013 Chapter 12 Bankruptcy and resolved by the Confirmation Order. BELKOVA attested, under oath, in her Affidavit of Valuation in support of her Motion to Value Secured Claim Four (4) of PNC that the Property was her farm. (D.E. 72-9 at 4). In her Second, Third, Fourth, Fifth, and Sixth Amended Chapter 13 Plans, she also represented that the Property was her farm. (D.E. 72-11 at 3).[2] In fact, in her Sixth Amended Plan, she invited the Court to confirm that she was the owner of the Property, either individually or through the Land Trust, which the Bankruptcy Court did. (D.E. 72-11 at 4). Specifically, in Paragraph 18 of the Confirmation Order, the Bankruptcy Court described the Property as "2251 Buckridge Trail, Loxahatchee, FL 33470 a/k/a Lot 122," and confirmed "the Debtor owns" the Property. (D.E. 72-12 at 7). The Confirmation Order had the effect of vesting the Property in BELKOVA. *See* 11 U.S.C. § 1227(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor"). PNC subsequently filed this *in rem* action seeking, among other things, to foreclose BELKOVA's ownership interest in the Property.

Neither the Confirmation Order nor the confirmation of her ownership of the Property in the Confirmation Order was challenged, questioned, amended, set aside, or vacated. Indeed, BELKOVA fully performed under the Sixth Amended Plan and received her Chapter 12

---

[2] PNC requests that the Court take judicial notice of the following documents from the 2013 Chapter 12 Bankruptcy: BELKOVA's Second, Third, Fourth, and Fifth Amended Chapter 12 Plans, attached hereto as Exhibits 1, 2, 3, and 4, respectively. *See* D.E. 72 note 1.

1080780.16

Discharge. (D.E. 72-13 at 2). As such, the Confirmation Order remains in full force and binding on BELKOVA and PNC. *See* 11 U.S.C. § 1227(a) ("[T]he provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan.").

The required elements of collateral estoppel are also satisfied in this case based on the same proceedings discussed above. The first and second elements are satisfied because the issue of ownership of the Property was asserted in the 2013 Chapter 12 Bankruptcy and resolved by the Confirmation Order. Based on the Sixth Amended Plan, the Court's findings with respect to these issues were critical and necessary for the Court to enter the Confirmation Order. Critically, BELKOVA had a full and fair opportunity to litigate these issues in the 2013 Chapter 12 Bankruptcy, and indeed, she did.

> **B.     *BELKOVA is also judicially estopped from taking a completely inconsistent position from the one she successfully maintained in the 2013 Chapter 12 Bankruptcy.***

This foreclosure action is based solely on the Court's diversity jurisdiction. (D.E. 16 ¶ 1). "In diversity cases, the application of the doctrine of judicial estoppel is governed by state law." *Boneta v. Am. Med. Sys., Inc.*, 524 F. Supp. 3d 1304, 1317 (S.D. Fla. 2021) (internal quotations omitted) (citing *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018) (citation omitted))). "Under Florida law, a party seeking to assert judicial estoppel must establish four elements, all of which must be present for estoppel to be successfully invoked:

> [1] A claim or position successfully maintained in a former action or judicial proceeding [2] bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, [3] to the prejudice of the adverse party, [4] where the parties are the same in both actions,

subject to the "special fairness and policy considerations" exception to the mutuality of parties requirement."

*Id.* at 1318 (quoting *Salazar-Abreu v. Walt Disney Parks and Resorts U.S., Inc.*, 277 So. 3d 629, 631 (Fla. 5th DCA 2018) (citation and footnote omitted)). "Stated differently, Florida's rule is that 'judicial estoppel applies when a party in a current proceeding has successfully maintained an inconsistent position in a prior proceeding to the prejudice of the adverse party in the current proceeding.'" *Id.* (quoting *Landmark Funding, Inc. ex rel. Naples Syndications, LLC v. Chaluts*, 213 So. 3d 1078, 1080 (Fla. 2d DCA 2017)). "This requires not only a showing of inconsistent statements, but also the identity of parties (or an exception to that requirement), the successful maintenance of the inconsistent position, and prejudice." *Id.* (citation and quotation omitted). "[P]rejudice occurs when the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citations and internal quotations omitted).

Here, as discussed above, BELKOVA took the position in her 2013 Chapter 12 Bankruptcy that she was the owner of the Property. In her Sixth Amended Plan, she asked the Court to confirm that she owned the Property individually or through the Land Trust. She successfully maintained that position in the 2013 Chapter 12 Bankruptcy when the Bankruptcy Court entered the Confirmation Order confirming she owns the Property.[3] The parties are the same in both actions, or a special exception to that requirement exists, as BELKOVA asserted in the 2013 Chapter 12 Bankruptcy that she owned the Property individually or through the Land Trust, and now in this action she, both in her individual capacity and her capacity as TRUSTEE of the Land Trust, takes

---

[3] BELKOVA continued to maintain her ownership position after the Confirmation Order, for example, in Paragraphs 10 and 11 of her Adversary Complaint (D.E. 72-14 at 3-4), and also in Paragraph 1 of her Emergency Motion for Entry of Hardship Discharge filed in the 2013 Chapter 12 Bankruptcy, attached hereto as Exhibit 5, of which PNC requests the Court take judicial notice. *See* D.E. 72 note 1.

1080780.16

the completely inconsistent position that the Warranty Deed conveying the Property to the Land Trust was invalid and thus neither BELKOVA nor TRUSTEE owns the Property.  The impact of the Confirmation Order and her Chapter 12 Discharge was that the more than $430,000 portion of PNC's claim that was treated as unsecured in the Valuation Order was discharged, leaving PNC its secured portion of its claim that had been valued at $325,000 in the Valuation Order.  (D.E. 72-10 at 2, 72-12 at 9).  Moreover, following their argument to its logical conclusion, should the Belkova Defendants prevail on this argument and all transactions subsequent to the Warranty Deed be voided, PNC could be at a total loss of all the money it lent pursuant to the Note.  BELKOVA, in any capacity, would derive an unfair advantage or impose an unfair detriment on PNC should she not be estopped from taking the position that the Warranty Deed conveying the Property to the Land Trust was invalid and thus neither BELKOVA nor TRUSTEE owns the Property.[4]

In sum, based on the application of the doctrines of *res judicata*, collateral estoppel, and/or judicial estoppel, the Belkova Defendants are precluded from asserting in this foreclosure action that the Warranty Deed conveying the Property to the Land Trust in 2004 was invalid and thus neither BELKOVA nor TRUSTEE owns the Property.

**II.     The Property was Conveyed to the Land Trust in Accordance with Florida Law.**

Even if the Belkova Defendants were not precluded from asserting in this foreclosure action that the Warranty Deed conveying the Property to the Land Trust in 2004 was invalid and thus neither BELKOVA nor TRUSTEE owns the Property, their assertions are belied by the record before this Court and are nothing more than a red herring.  Indeed, the Belkova Defendants ask

---

[4] *C.f. In re Failla*, 838 F.3d 1170, 1178 (11th Cir. 2016) (finding that a debtor who surrendered property in bankruptcy could not subsequently raise defenses in a foreclosure action of that property, reasoning that a debtor "may not say one thing in bankruptcy court and another thing in state court," as doing so permits the debtor to make a "mockery of the legal system by taking inconsistent positions").

1080780.16

this Court in the Response to utterly disregard any prior statements made by them in any capacity, and to instead give credence to their assertions in the Response that are unsupported by summary judgment evidence. (D.E. 91 ¶ 3). As such, the Court should summarily reject their assertions.

Moreover, they ask this Court to consider the Warranty Deed in a vacuum and completely ignore PNC's summary judgment evidence that tells a more complete story. Specifically, the Belkova Defendants simply assert that the "Deed from inception in the instant matter failed to contain the required language, and therefore failed to create a Florida Land Trust." (D.E. 91 ¶ 7). They have not cited to anything in the record before the Court to support that broad conclusion. The Deed to which they presumably refer is the Warranty Deed dated February 9, 2004, conveying the Property from "James Sobocienski, as single man," to "Joseph M. Hanratty," as trustee of the Land Trust. (D.E. 72-14 at 15). The Belkova Defendants conveniently overlook that a Trustee's Affidavit was simultaneously recorded at the exact same second as the Warranty Deed ("02/12/2004 11:42:10") and contains the statutory language they complain is missing from the Deed. (*Compare* D.E. 72-2 at 2 *with* D.E. 72-14 at 15). The Warranty Deed, the Mackinac Mortgage, and the Trustee's Affidavit are "recorded instruments" that were simultaneously recorded (at the same second) and appear sequentially in the same Palm Beach County Official Records Book, and considering those three documents together, it is abundantly clear that the Property was conveyed into the Land Trust in accordance with Florida law. (D.E. 16-1, D.E. 72-2 at 2, D.E. 72-14 at 15).[5]

---

[5] Indeed, PNC's summary judgment evidence offers further support for that conclusion. In particular, James Sobocienski executed a Land Trust Agreement on February 9, 2004, which was not recorded, in which Joseph M. Hanratty was designated as trustee of the Land Trust, and in which the beneficiaries *only* had *personal* property interests in proceeds from the use of the Property. (D.E. 72-14 at 9-13, 72-14 at 9 ¶ 3). At the time of the execution of the Land Trust Agreement, James Sobocienski was the 100% beneficiary. (D.E. 72-14 at 9). The Warranty Deed reflects that it was prepared by Dolores Sanchez, Esquire, and the Land Trust Agreement reflects

The sole case relied upon by the Belkova Defendants in the Response is distinguishable from this case. (D.E. 91 ¶ 5 (citing *Brigham v. Brigham*, 11 So. 3d 374, 376 (Fla. 3d DCA 2009)). In *Brigham*, Marion, the owner of land, conveyed certain real property into a land trust (the "EFP Land Trust"). 11 So. 3d at 377. Dana, her attorney, was designated as trustee of the EFP Land Trust, and a revocable trust was designated as its sole beneficiary. *Id.* Subsequently, Dana unilaterally conveyed property out of the EFP Land Trust and into another land trust, of which he was the sole beneficiary. *Id.* at 377-78. In analyzing whether Dana had authority to convey property to the new land trust without court approval, the court considered whether he had authority under §689.071, and concluded he did not due to missing language from the EFP Land Trust Deed. *Id.* at 383-84. Critically, although the court concluded the EFP Land Trust Deed did not create a Florida Land Trust, it did not void that deed. Instead, the court voided the subsequent deed to Dana's new land trust, and ordered Dana to repay proceeds from the sale of the property to the EFP Land Trust, into which that property had initially been conveyed. *Id.* at 388. Applying *Brigham* here, even if the three simultaneously recorded instruments discussed above did not contain sufficient language under §689.071 (which is not the case), that would not affect the validity of the Warranty Deed nor void it as the Belkova Defendants urge this Court to do.[6]

---

that Dolores Sanchez represented James Sobocienski. (D.E. 72-14 at 12 ¶ 24, 15). Dolores Sanchez also prepared the Trustee's Affidavit for signature by Joseph M. Hanratty, as trustee of the Land Trust, and had it recorded, and she notarized his signature on that document and the Mackinac Mortgage. (D.E. 16-1 at 8, D.E. 72-2 at 2). In other words, considering the involvement of the attorney representing James Sobocienski in preparing the Land Trust Agreement, the Warranty Deed, and the Trustee's Affidavit, which included sufficient language regarding the authority of Joseph M. Hanratty, as trustee of the Land Trust, it is unquestionable that the intent of the parties was to convey the Property into the Land Trust.

[6] At best, the Warranty Deed could only be deemed voidable, and given the clear intent to convey the Property into the Land Trust, the passage of almost eighteen years since that conveyance, and the intervening events during that time, the Warranty Deed should not be deemed voidable. *Cf. Schlossberg v. Estate of Kaporovsky*, 303 So. 3d 982, 988 (Fla. 4th DCA 2020) (declining to deem a deed voidable due to the alleged lack of authority of a trustee to convey real property, and

Moreover, and for the sake of argument only, it cannot be overlooked that the Belkova Defendants are essentially disclaiming any interest in the Property. Following their argument to its logical conclusion, if the Land Trust was void, resulting in title vesting in the purported beneficiary, i.e Anisa Nazarova, then the Belkova Defendants do not have, and never had, any interest in the Property.  Consequently, they would not have standing to raise any defense to the foreclosure action if the Court were to accept their argument because they would have no interest being foreclosed.  But again, their argument is belied by the record. (D.E. 72-15 at 20, 22).

Further, the Belkova Defendants argue that, even if the Property had been properly conveyed to the Land Trust, there was no written direction from the beneficiary for Joseph M. Hanratty to ever act.  This argument too lacks any factual support, and PNC's summary judgment evidence again belies their argument.  For example, at the time of execution of the PNC Mortgage, BELKOVA was the 100% beneficiary of the Land Trust.  (D.E. 72-15 at 20, 22).  BELKOVA executed the Note dated January 14, 2005 "as beneficiary of" the Land Trust.  (D.E. 72-3 at 4). On the signature page of the Note, BELKOVA expressly acknowledged that a Mortgage, "dated the same date as this Note" would be executed as security for the Note, and also acknowledged that "[t]he state documentary tax due on this Note has been paid on the mortgage securing this indebtedness."  (D.E. 72-3 at 4 ¶¶ 10, 11).  Consistent with that written direction, Joseph M. Hanratty, as trustee of the Land Trust, executed the PNC Mortgage, which is dated the same date as the Note and encumbers the same Property described in the Note. (D.E. 72-3, 72-4).

For all of the foregoing reasons, and those discussed in PNC's Motion for Summary Judgment, the Court should award final summary judgment in favor of PNC because there is no genuine dispute as to any material fact, and PNC is entitled to judgment as a matter of law.

---

concluding that a deed procured by "overreaching" could make the deed voidable but not void).

1080780.16

Respectfully submitted on this 28th day of December, 2021

**McGLINCHEY STAFFORD**

*/s/ William L. Grimsley*
Kimberly Held Israel
Florida Bar No. 47287
William L. Grimsley
Florida Bar No. 84226
10407 Centurion Parkway North, Ste. 200
Jacksonville, FL 32256
Phone: (904) 224-4449
Primary E-mails: kisrael@mcglinchey.com
wgrimsley@mcglinchey.com
Secondary: cgipson@mcglinchey.com
***Attorneys for Plaintiff, PNC BANK, N.A.***

**CERTIFICATE OF SERVICE**

I hereby certify that in accordance with this Court's electronic filing procedures, this document has been electronically filed this 28th day of December, 2021. A Notice of Electronic Filing will be sent by the Court to all counsel of record who have consented to e-mail notification and electronic service. This document is available for viewing and downloading from the Court's ECF system.

**VIA CM/ECF**

**Steven R. Braten, Esq.**
SBraten@rosenbaumpllc.com
*Counsel for Defendant, DEER RUN PROPERTY OWNERS ASSOCIATION, INC.*

**Adam I. Skolnik, Esq.**, askolnik@skolniklawpa.com
Counsel for *Defendants, LILIA BELKOVA, INDIVIDUALLY, AND LILIA BELKOVA, AS SUCCESSOR TRUSTEE OF THE LAND TRUST AGREEMENT NO. 072003 DATED FEBRUARY 9, 2004*

*/s/ William L. Grimsley*
ATTORNEY

1080780.16