## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: 21-80758-CV-MIDDLEBROOKS

PNC BANK, NATIONAL ASSOCIATION,

    Plaintiff,

v.

LILIA BELKOVA, et al.,

    Defendants.

_____/

## **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE comes before the Court upon Plaintiff's Amended Motion for Summary Judgment, filed on November 16, 2021. (DE 71). The Motion is fully briefed. (DE 91; DE 93). For the following reasons, the Motion is granted.

**I.    BACKGROUND**

Plaintiff initiated this foreclosure action on April 23, 2021 after Defendants Lilia Belkova individually and as Successor Trustee of the Land Trust Agreement No. 072002 Dated February 9, 2004 (the "Belkova Defendants") defaulted on payments due under a mortgage held by Plaintiff. (DE 1). Plaintiffs' Second Amended Complaint includes three counts against the Defendants[1] for foreclosure of Plaintiff's mortgage, or, in the alternative, for foreclosure of equitable lien or foreclosure of equitable subrogation lien, respectively. (DE 16 at 76–108).

The real property that is the subject of this matter is located at 2251 Buck Ridge Trail, Loxahatchee, Florida 33470 (the "Property"). In February 2004, Defendant Belkova formed Land

---

[1] Throughout this Order, "Defendants" refers to the Belkova Defendants and Defendant Deer Run Property Owners Association, Inc. Defendant JPG Enterprises, Inc was dropped from this action on August 11, 2021, and Plaintiff has moved for default judgment against Defendant Enterprise Funding Solutions, LLC, who has failed to appear.

Trust Agreement No. 072003 Dated February 9, 2004 for the purpose of acquiring the Property. (DE 16, Plaintiff's Second Amended Complaint, at ¶ 5). The Property was then purchased by Joseph M. Hanratty as Trustee of the Land Trust Agreement No. 072003 from non-party James Sobocienski on February 9, 2004. (DE 72, Plaintiff's Statement of Material Facts,[2] at ¶¶ 3–4). To complete the sale, Mr. Hanratty took out a $123,750.00 mortgage, executed by Mackinac Savings Bank (the "Mackinac Mortgage"). (*Id.*). On January 14, 2005, Defendant Belkova "as Beneficiary of Land Trust 072003" took out a $530,000.00 Promissory Note (the "Note") from Plaintiff's predecessor by merger, Fidelity Bank & Trust, which was secured by a mortgage on the property (the "PNC Mortgage") executed by Mr. Hanratty as Trustee of the Land Trust. (*Id.* at ¶¶ 7–8). Proceeds from the Note were used to pay off the Mackinac Mortgage in full. (*Id.* at ¶ 10; DE 72-5). Subsequently, on February 15, 2007, Mr. Hanratty as Trustee of the Land Trust transferred the Property to Trust Management LLC as Successor Trustee of the Land Trust, and on January 30, 2012, the Property was transferred from Trust Management LLC to "TRUSTEE." (*Id.* at 3).

On November 4, 2013, Defendant Belkova filed for Chapter 12 bankruptcy. (*Id.* at ¶ 14). As part of the bankruptcy proceedings, Plaintiff filed a Proof of Claim and attached copies of the Note and PNC Mortgage. (*Id.* at ¶ 15; DE 16 at ¶ 32). The Parties ultimately settled Plaintiff's Claim, and the Settlement was memorialized in the Bankruptcy Court's Amended Order Granting Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim (4) of PNC Bank (the "Valuation Order"). (DE 72-10). On April 10, 2017, Defendant Belkova filed her Sixth Amended Chapter 12 Plan, which "confirmed that Debtor is the owner of this property

---

[2] Unless otherwise indicated, the facts in this section come from Plaintiff's Statement of Material Facts (DE 72). Defendants did not file their own statement of material facts and did not rebut any of the facts in Plaintiff's Statement. It is well-settled that any facts included in the moving party's statement of material facts that are not controverted in the non-moving party's response or sworn pleadings may be deemed admitted. *See* Fed. R. Civ. P. 56(e)(2), (3).

2

located in Palm Beach County" and stated that the new balance would be $325,000.00. (DE 72 at ¶¶ 21–22). The Bankruptcy Court entered an Order confirming the plan (the "Confirmation Order"), and Defendant Belkova performed her obligations under it and received her Chapter 12 discharge on June 3, 2020. (*Id.* at ¶¶ 23–24).

As part of the bankruptcy proceedings, on December 14, 2018, Defendant Belkova filed an adversary proceeding against Plaintiff seeking to invalidate the PNC Mortgage on the ground that the PNC Mortgage is invalid due to the failure to obtain the consent of the beneficiaries to the Land Trust. (*Id.* at ¶ 25). The Bankruptcy Court dismissed Defendant Belkova's Complaint and concluded that "PNC Bank retains enforceable lien rights on certain real property located at 2251 Buck Ridge Trail." (DE 72-17).

Under the PNC Mortgage, as modified by the Valuation Order and Confirmation Order, the Belkova Defendants were required to make monthly payments to Plaintiff and to pay property taxes and hazard insurance for the Property. (*Id.* at ¶ 29). However, beginning on June 1, 2020, the Belkova Defendants failed to do so. (*Id.* at ¶¶ 30–31). In response, Plaintiff sent a notice of default on March 16, 2021, but the Belkova Defendants failed to cure the defaults and this litigation followed. (*Id.* at 33).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-

movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The party moving for summary judgment bears the burden of establishing that there is insufficient evidence to support the non-moving party's case. *Id.* at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

## III. DISCUSSION

Plaintiff now moves for summary judgment on its foreclosure claims. To make out a prima facie case, "[f]oreclosure plaintiffs must show: (1) an agreement; (2) a default; (3) an acceleration of debt to maturity; and (4) the amount due." *Bank of America, N.A. v. Delgado*, 166 So.3d 857, 859 (Fla. 3d DCA 2015). Plaintiff argues that it is entitled to summary judgment because there is no dispute as to any material fact and, based on the undisputed facts, it has demonstrated that each element of its prima facie case is satisfied. (DE 71 at 5). Defendants do not dispute that Plaintiff had an agreement with the Belkova Defendants—the Note and the PNC Mortgage. (*See* DE 72 at ¶¶ ¶¶ 7–8). Nor do they dispute that the Belkova Defendants defaulted on the PNC Mortgage, as modified by the Valuation Order and the Confirmation Order, by failing to pay property hazard

4

insurance and post-petition property taxes and by failing to make monthly payments beginning on June 1, 2020, or that the debt has reached maturity. (DE 71 at 9–10). Rather, the Belkova Defendants' sole argument against summary judgment is that no valid land trust was created in 2004, so "each and every subsequent transfer or assignment of the property failed." (DE 91 at ¶¶ 4–5).

The Belkova Defendants' assertions are wholly without merit and border on bad faith. Defendants' entire argument is premised on the fact that, to create a land trust under Florida law, the "recorded instrument" must contain certain language set forth in Fla. Stat. § 689.071(1).[3] According to Defendants, a deed here did not contain the required language, and, as such, did not create a valid Florida land trust. (DE 91 at ¶ 7). Although Defendants do not specify which of the deeds purportedly lacks the necessary language, it appears that they are referring to the Warranty Deed dated February 9, 2004 initially transferring the Property to Mr. Hanratty as Trustee. (*See* DE 72-14 at 15). While it is true that the Warranty Deed itself lacks the statutory language, a Trustee's Affidavit, which was part of the "recorded instrument" and was simultaneously recorded

---

[3] That provision provides:

> Every conveyance, deed, mortgage, lease assignment, or other instrument heretofore or hereafter made, hereinafter referred to as "the recorded instrument," transferring any interest in real property in this state, . . . is designated "trustee," or "as trustee," without therein naming the beneficiaries of such trust, whether or not reference is made in the recorded instrument to any separate collateral unrecorded declarations or agreements, is effective to vest, and is hereby declared to have vested, in such trustee full rights of ownership over the real property or interest therein, with full power and authority as granted and provided in the recorded instrument to deal in and with the property or interest therein or any part thereof; ***provided, the recorded instrument confers on the trustee the power and authority either to protect, conserve and to sell, or to lease, or to encumber, or otherwise to manage and dispose of the real property described in the recorded instrument***.

(Emphasis added).

5

with the Warranty Deed, includes it. (*Compare* DE 72-2 at 2 *with* DE 72-14 at 15). Thus, because the "recorded instrument" contained the required statutory language, Defendants' argument fails.[4]

Moreover, Defendants' position that no valid land trust was created is completely at odds with their position in the bankruptcy proceedings. In those proceedings, Defendant Belkova unequivocally stated that she owned the Property. Indeed, Plaintiff's own Adversary Complaint before the Bankruptcy Court stated that "Legal title to the Property is currently held by Lilia Belkova." (DE 72-14 at 3–4). And a debtor "may not say one thing in bankruptcy court and another thing in state court," thereby "making a mockery of the legal system by taking inconsistent positions." *In re Failla*, 838 F.3d 1170, 1178 (11th Cir. 2016).

Defendants' Response does not point to any genuine issue of material fact that remains and Plaintiffs have demonstrated that they are entitled to summary judgment. Plaintiff has produced evidence that demonstrates that it and the Belkova Defendants entered into a valid agreement, and Defendants have defaulted on it. (*See generally* DE 72). Further, the evidence produced by Plaintiff demonstrates that acceleration has occurred, and that the amount due is $340,482.07. (DE 72-1 at ¶ 24). Thus, Plaintiff has pointed to undisputed evidence that shows it has satisfied all four elements of a foreclosure cause of action and its Amended Motion for Summary Judgment is granted.

Finally, Plaintiff requests $191,229.60 in attorneys' fees. (DE 71 at 12). The PNC Mortgage provides that Plaintiff is entitled to "all expenses incurred in enforcing this Security

---

[4] Defendants also state in their Response that "[e]ven had a valid Florida Land Trust been created, by definition the Trustee of such a Trust could only act at the written direction of the beneficiary (Nazarova) [Defendant Belkova's mother]. None of this ever occurred, therefore either there was no Land Trust or there was no authority for the Trustee to act." (DE 91 at 3). But Defendants offer no factual or legal support for their position, which is belied by the fact that the Note was executed by Defendant Belkova "as beneficiary of the Land Trust." (DE 72-3 at 4). Thus, because Defendants have not provided any support for this conclusory paragraph and because it is belied by the undisputed facts in the record, I do not address the argument further.

Instrument, including, but not limited to, reasonable attorneys' fees . . . ." (DE 72-4 at ¶ 19). Defendants did not respond to Plaintiff's demand for attorneys' fees or object to the amount requested. Based on the detailed time records submitted by Plaintiff's attorney, I find that the amount requested is reasonable considering the facts and circumstances of this case. (*See* DE 72-18). As such, Plaintiff's request for attorneys' fees is granted.

IV.   **CONCLUSION**

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that

(1) Plaintiff's Motion for Summary Judgment (DE 71) is **GRANTED**.

(2) Final Judgment will be issued by separate Order.

**SIGNED** in Chambers at West Palm Beach, Florida, this 6th day of January, 2022.

Donald M. Middlebrooks
United States District Judge